UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIBEL O.,<br><br>                       Plaintiff,<br><br>v.<br><br>LEE DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                       Defendant. | Case No.: 23-cv-2029-SBC<br><br>**ORDER AFFIRMING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

On November 2, 2023, Plaintiff Maribel O.[1] commenced this action against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for a period of disability and disability insurance benefits. (ECF No. 1.)[2] On November 20, 2023, Plaintiff consented to the

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2] Lee Dudek is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

undersigned's jurisdiction to conduct all proceedings in this case. (ECF No. 6.)[3] Defendant filed the Administrative Record on January 2, 2024. (ECF No. 9.) Plaintiff filed a Merits Brief on March 18, 2024. (ECF No. 13.) Defendant filed an Opposition to Plaintiff's Merits Brief on April 26, 2024. (ECF No. 17.)

For the following reasons, the final decision of the Commissioner is **AFFIRMED**.

## I.   BACKGROUND

### A.   Factual and Procedural History

Plaintiff, who was born in 1963, previously held employment as a hairstylist and machine operator. (AR 39, 41, 270.)[4] On or about October 16, 2019, Plaintiff filed an application for disability insurance benefits under the Social Security Act. (AR 231-39.) Plaintiff alleged that she had been disabled since February 1, 2019, due to breast cancer; sciatica nerve damage; carpal tunnel pain; neuropathy; back, knee, neck, and leg pain; and colitis. (AR 268-70.) Plaintiff's applications were denied on initial review and again on reconsideration. (AR 78-82, 84-89.) An administrative hearing was conducted on September 13, 2022, by Administrative Law Judge ("ALJ") Andrew Verne. (AR 32.) On November 10, 2022, the ALJ issued a decision and concluded that Plaintiff was not disabled from February 1, 2019, through the date of the decision. (AR 20-27.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on September 15, 2023. (AR 8-10.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

---

[3]   The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature. *See* S.D. Cal. Gen. Order No. 707 (Apr. 12, 2019).

[4]   "AR" refers to the Administrative Record filed on January 2, 2024. (ECF No. 9.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

### B. ALJ's Decision

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since February 1, 2019, the alleged onset date. (AR 22.) The ALJ noted that although Plaintiff worked after the alleged disability onset date, this work activity did not rise to the level of substantial gainful activity. (*Id.*) The ALJ also noted that Plaintiff collected unemployment through the third quarter of 2021. (*Id.*) At step two, the ALJ found that Plaintiff's severe impairments consisted of degenerative disc disease and carpal tunnel syndrome; he determined that Plaintiff's medically determinable impairments of depression and anxiety were not severe. (AR 22-23.) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 24.)

The ALJ found that Plaintiff had the residual functional capacity to perform:

> [L]ight work as defined in [20 C.F.R. § 404.1567(b)] except that [Plaintiff] can occasionally climb ramps, stairs, ropes, ladders[,] and scaffolds. [Plaintiff] has no balance limitations. [Plaintiff] can occasionally stoop, kneel, crouch[,] and crawl. She can bilaterally handle and finger frequently. Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing[,] and walking for 6 hours in an 8-hour workday with normal breaks.

(*Id.*)

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a hair stylist and assembly press operator. (AR 26.) Therefore, the ALJ concluded that Plaintiff had not been under a disability from February 1, 2019, through the date of his decision. (AR 27.)

///

///

### C.  Disputed Issues

Plaintiff asserts two grounds for reversal: (1) the ALJ's step two determination that Plaintiff had a non-severe mental impairment was not supported by substantial evidence and (2) the ALJ erroneously rejected Plaintiff's subjective symptom testimony. (Pl.'s Br., ECF No. 13 at 4-15.)

## II.  LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and a decision denying benefits will be set aside "only if is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citations omitted). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

///

///

## III.   DISCUSSION

### A.   ALJ's Evaluation of Plaintiff's Mental Impairments at Step Two

Plaintiff argues that the ALJ improperly evaluated the medical evidence in determining that Plaintiff's mental impairments were not severe. (Pl.'s Br., ECF No. 13 at 4-8.) Defendant counters that substantial evidence supports the ALJ's findings. (Def.'s Opp'n, ECF No. 17 at 4-7.) The Court agrees with Defendant that the ALJ's evaluation of Plaintiff's mental impairments at step two is supported by substantial evidence.

#### 1.   Applicable standards

At step two in the sequential evaluation, the Social Security Administration ("SSA") considers the medical severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). To be found disabled, a disability claimant must have a medically determinable physical or mental impairment or combination of impairments that is severe. *Id.* A "medically determinable" physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.* § 404.1521. Once a medically determinable impairment is established, the SSA decides whether the impairment or combination of impairments is "severe." *Id.* A severe impairment is one "which significantly limits [the] physical or mental ability to do basic work activities[.]" *Id.* § 404.1520(c). "Basic work activities" include the abilities and aptitudes necessary to perform most jobs, such as (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1522.

When an applicant for disability benefits claims a mental impairment, the ALJ must employ the special technique described in 20 C.F.R. § 404.1520a to rate the degree of functional limitation resulting from the impairment. *See* 20 C.F.R. § 404.1520a(a), (b)(2). A five-point scale (none, mild, moderate, marked, and extreme) is used to rate the degree

of functional limitation in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 404.1520a(c)(3)-(4).[5] After rating the degree of functional limitation, the ALJ determines the severity of the mental impairment. *Id.* § 404.1520a(d). If the degree of limitation is rated as "none" or "mild," the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1).

### 2.  ALJ's analysis of the severity of Plaintiff's mental impairments

In making his step two severity determination, the ALJ conducted the four-part special technique described above to rate the degree of functional limitations resulting from Plaintiff's medically determinable impairments of depression and anxiety. (AR 22-23.) As discussed in further detail below, he found that Plaintiff had only "mild" limitations in each of the four broad functional areas. (AR 23.) The ALJ concluded that "[b]ecause [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities, they are nonsevere[.]" (*Id.* (citation omitted).)

### 3.  Plaintiff's medical records relating to depression and anxiety

On September 17, 2019, Plaintiff presented to physician's assistant Jose L. Ramirez with complaints of multiple physical ailments and depression. (AR 392.) She was assessed with moderate recurrent major depression, provided with a referral to psychology, and prescribed Sertraline HCI, an anti-depressant. (AR 395.) On January 22, 2020, Plaintiff

---

[5]  These four functional areas are known as the "paragraph B" criteria due to the manner in which they are categorized in the listing of impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

sought to establish care with primary care physician Jorge Otanez Cervantes, M.D.. (AR 420.) Dr. Otanez Cervantes conducted a psychiatric assessment, found Plaintiff's Patient Health Questionnaire–9 ("PHQ–9") and Generalized Anxiety Disorder–7 ("GAD–7") scores to be "high," and indicated that Plaintiff had admitted to suicidal ideation without attempt. (AR 421-23.) The doctor noted that Plaintiff had an upcoming appointment with a psychologist. (AR 423.)

On January 27, 2020, Plaintiff underwent a Psychology Initial Assessment with Janet Ratniewski, Ph.D. (AR 417.) Dr. Ratniewski conducted PHQ–9, GAD–7, and AUDIT tests and assessed Plaintiff with moderate recurrent major depression and post-traumatic stress disorder. (AR 418.) According to Plaintiff's mental status examination, she was not a danger to herself or others, and had cognition within normal limits, appearance within normal limits, anxious and depressed mood and affect, and behavior within normal limits. (*Id.*) The psychologist recommended that Plaintiff receive a nine-month course of individual therapy, including cognitive behavioral therapy. (*Id.*) Dr. Ratniewski also wrote a "To Whom It May Concern" letter indicating that Plaintiff needed an emotional support animal. (AR 399.) Plaintiff attended a cognitive behavioral therapy session on February 17, 2020, (*see* AR 415-16), but does not appear to have attended any additional sessions until December 7, 2020 and November 10, 2021. (AR 451, 462.)[6] Prior to her December 7, 2020 therapy session, Plaintiff had a telephonic consultation with Dr. Otanez Cervantes on November 23, 2020, during which she requested a prescription refill for Sertraline, which the doctor provided. (AR 439-40.)

---

[6]     The record does not contain notes of Plaintiff's December 7, 2020, and November 10, 2021 visits. Rather, the record simply reflects that Plaintiff had telephone appointments with Dr. Ratniewski on these dates and that Plaintiff's diagnosis remained "major depressive disorder, recurrent, moderate." (AR 451, 462.)

The record contains no further evidence of any mental health treatment. On February 23, 2022, Dr. Ratniewski discharged Plaintiff from care after Plaintiff failed to return for scheduled appointments or ended treatment against provider advice. (AR 470.)

### 4. Analysis

Plaintiff contends that the ALJ ignored her PHQ–9 and GAD–7 scores, which demonstrated moderately severe depression and moderate anxiety, respectively, as well as records indicating that she presented with symptoms of anxiety and depression, was prescribed an anti-depressant, and attended psychological counseling and therapy, in making his step two determination that her mental impairments were not severe. (Pl.'s Br., ECF No. 13 at 4-5.) To determine whether an ALJ's analysis at step two was proper, the Court must consider whether substantial evidence supports the ALJ's determination. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Sandgathe*, 108 F.3d at 980 (defining substantial evidence as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

The ALJ in this case utilized the four-part special technique described above to rate the degree of functional limitations resulting from Plaintiff's medically determinable impairments of depression and anxiety. (AR 22-23.) First, in finding that Plaintiff had only a mild limitation in her ability to understand, remember, or apply information, the ALJ explained that the record reflected that Plaintiff was able to "count change, handle a savings account[,] and use a checkbook/money order." (AR 23, citing AR 309.) The ALJ further noted that Plaintiff was able to shop using a computer and demonstrated normal cognition on a mental status examination. (*Id.*, citing AR 309, 418.) Substantial evidence in the record supports the ALJ's determination.

Second, in finding that Plaintiff had only a mild limitation in her ability to interact with others, the ALJ noted that Plaintiff was able to "interact with others sufficiently to acquire goods and services, as well as successfully coordinate medical needs with health

care providers for relevant healthcare." (*Id.*, citing AR 309, 407-24.) He also observed that Plaintiff was able to spend time with her sister and had "not demonstrated any difficulty communicating with medical providers and demonstrated excellent engagement on exam." (*Id.*, citing AR 310, 415.) Substantial evidence in the record supports this finding.

Third, the ALJ considered Plaintiff's ability to concentrate, persist, or maintain pace, and concluded that Plaintiff had only a mild limitation. (*Id.*) The basis for the ALJ's determination was that Plaintiff's mental status examination showed that she had "normal cognition, normal behavior[,] and no impairment in her thought content." (*Id.*, citing AR 415, 418.) This finding is supported by substantial evidence in the record.

Fourth, the ALJ evaluated Plaintiff's ability to adapt or manage herself and found that Plaintiff had only a mild limitation. (*Id.*) The ALJ noted that Plaintiff was able to prepare simple meals and take care of her dogs, including feeding and washing them. (*Id.*, citing AR 307-08.) The ALJ further observed that Plaintiff's examination notes described Plaintiff as having a "normal, well appearing, awake[,] and alert appearance." (*Id.*, citing AR 408, 412, 421.) These findings are supported by substantial evidence in the record.[7]

Plaintiff's reliance on her PHQ–9 score of 18 and her GAD–7 score of 12, assessed on January 22, 2020, (*see* AR 418), to support her argument that her mental impairments

---

[7] The ALJ also stated that the record indicated that Plaintiff had "the ability to regulate her emotions, control her behavior, and maintain her well-being," and that Plaintiff could "set realistic goals, make plans independently of others, maintain[] personal hygiene and attire, and be aware of normal hazards and take appropriate precautions." The ALJ cites a number of records for these statements, including AR 407, 418 and 423. While the Court notes that the records cited by the ALJ do not fully support these statements, any overreach constitutes harmless error and therefore does not alter the conclusion because the ALJ cited sufficient substantial evidence to support his finding that Plaintiff had only a mild limitation in adapting or managing herself. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("harmless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted).

are severe, is unavailing. (Pl.'s Br., ECF No. 13 at 4.)[8] Plaintiff's PHQ–9 score of 18, reflecting "moderately severe" depression, and GAD–7 score of 12, reflecting "moderate" anxiety, does not mean that her depression and anxiety are "moderately severe" or "moderate" for purposes of evaluating her disability claim. Rather, evaluating the severity of her mental impairments for purposes of her disability claims depends on the degree of functional limitation resulting from the mental impairment on the claimant's ability to work. *See* 20 C.F.R. § 404.1520a(c), (d); *see also Mary G. v. Kijakazi*, Case No. CV 23-01972-DFM, 2023 WL 6304853, at *5 (C.D. Cal. Sept. 27, 2023) ("[Plaintiff's] PHQ and GAD scores only indicate what Plaintiff (and the ALJ) already notes, that she suffers from major depressive order and anxiety; they do not speak to whether or not Plaintiff has . . . limitations in the areas required to satisfy paragraph B.") (internal quotations and citation omitted).

Plaintiff further argues that the ALJ prematurely terminated the inquiry into her mental impairments at step two of the disability determination. (Pl.'s Br., ECF No. 13 at 6-7.) She correctly observes that step two is used as a "de minimis screening device [used] to dispose of groundless claims." (*Id.*, citing *Webb*, 433 F.3d at 687.) Her reliance on the Ninth Circuit's decision in *Glanden v. Kijakazi*, 86 F.4th 838 (9th Cir. 2023), however, is

---

[8] The PHQ–9 and GAD–7 are "two mental health assessment tests . . . which assess depression and anxiety, respectively." *Choat v. Berryhill*, No. 6:17-cv-00619-HZ, 2018 WL 2048332, *10 (D. Or. Apr. 30, 2018). PHQ–9 scores, which quantify nine criteria for depression, are generally interpreted as follows: minimal depression (0-4); mild depression (5-9); moderate depression (10-14); moderately severe depression (15-19); and severe depression (20-27). *Salina S. v. Kijakazi*, Case No. 1:20-CV-00515-REP, 2022 WL 3700880, *5 n.4 (D. Idaho Aug. 25, 2022) (citation omitted). On the GAD–7, a score in the range 0-4 indicates minimal anxiety and a score of 5-9 indicates mild anxiety. *Jeremy S. v. O'Malley*, Case No.: 23-cv-00184-AJB-JLB, 2024 WL 343179, at *10 (S. D. Cal. Jan. 29, 2024). "Scores of 5, 10, and 15 are taken as the cut-off points for mild, moderate and severe anxiety, respectively." *Id.* (citation omitted).

misplaced. In *Glanden*, the ALJ found that the plaintiff was not disabled during the relevant period and denied his claim at step two without considering the remaining steps. *Id.* at 842. Here, in contrast, the ALJ did not stop consideration of Plaintiff's claim at step two, and thus did not screen out Plaintiff's disability claim as de minimis. As the Ninth Circuit noted, it is "relatively rare" for an ALJ to deny a claim at step two, (*see id.* at 844), and the ALJ did not do so here. *Glanden* is inapposite. Furthermore, step two is not meant to identify the impairments that should be considered when determining a claimant's RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). "In fact, '[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"" *Id.* at 1049, citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Here, the ALJ's decision reflects that he considered Plaintiff's depression and anxiety when formulating her RFC. (*See* AR 24-26.)

In sum, the ALJ supported his findings that Plaintiff's mental impairments resulted in only mild functional limitations with substantial evidence in the record. *See Sandgathe*, 108 F.3d at 980. He could therefore properly find that her mental impairments were not severe. Plaintiff's argument that the ALJ erred at step two is without merit.

**B.      ALJ'S Evaluation of Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to articulate any clear and convincing reasons to reject her subjective symptom testimony. (Pl.'s Br., ECF No. 13 at 9-15.) The Court disagrees.

**1.      Applicable standards**

It is up to the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(b). Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c). When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *see also Lambert*, 980 F.3d at 1277; *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102).

### 2. Plaintiff's subjective symptom testimony

At the administrative hearing, Plaintiff testified that she last worked in 2019 as a hair stylist. (AR 39.) Plaintiff initially collected unemployment but was no longer doing so at the time of the hearing. (*Id.*)[9] Plaintiff testified that she is no longer able to work as a hair stylist because "I [was making] a lot of mistakes" such as "scissors [falling] out of my hands" and "[t]hings . . . the customers don't [like]." (AR 42.) Plaintiff stated that she also cannot work because "I cannot stand up for a long time or sit for a long time, I have to stand and sit. And I lose strength in my hands." (*Id.*) Plaintiff continued, "I started having a lot of problems with, like anxiety attacks. I didn't know I was [having] anxiety attacks until I started going to the doctor. I thought it was just me being nervous." (AR 43.) Plaintiff

---

[9]   Receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time as it demonstrates that the claimant is holding herself out as available for work. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)).

stated that medical providers had recommended the use of a cane but she did not use it because "I don't want to get to the point where I have to." (*Id.*)

Plaintiff testified that she had "lots of surgeries in my left arm" during cancer treatment "which give[s] me a lot of pain all the time." (AR 44.) Plaintiff stated that she "cannot carry anything heavy or . . . pick up things from the floor or things like that." (*Id.*) With respect to mental health treatment, Plaintiff testified that a therapist had prescribed Sertraline, a Zoloft-type medication, that she had been taking "for many years." (AR 44.) Plaintiff has not been hospitalized for any mental health issues. (*Id.*)

### 3. ALJ's findings regarding Plaintiff's subjective symptom testimony

The ALJ determined that Plaintiff satisfied step one of the two-step analysis. (AR 25.) At the second step, the ALJ stated that "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ's decision contains several reasons for this finding, including the following: (1) "[symptoms] are inconsistent with the longitudinal treatment record, which is very sparse," including a "lack of significant mental health treatment"; (2) "behavior, appearance and cognition presented within normal limits" on a mental status examination; (3) "ability to perform a wide range of activities such as caring for her dogs, preparing simple meals, shopping online and managing her savings and checking accounts"; and (4) "the claimant has not been hospitalized, and her care has been medication management in nature" including "refills of Sertraline for depression." (AR 25-26.)

As will be discussed below, these constitute specific, clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's pain testimony.

### 4. Analysis

#### a. Sparse treatment record

Under the regulations, the treatment received by a claimant for relief of pain or other symptom is pertinent to evaluating the claimant's symptom testimony. *See* 20 C.F.R. §

13

404.1529(c)(3)(v). Receiving only "minimal, conservative treatment" is a valid reason to discredit a claimant's symptom testimony. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted). Here, the treatment records for both Plaintiff's physical and mental impairments are sparse. With respect to her physical impairments, Plaintiff saw physician's assistant Jose Ramirez on September 17, 2019, with complaints of bilateral carpal tunnel, lumbago with sciatica, irritable bowel syndrome, and depression. (AR 392.) Plaintiff was referred for x-rays of her wrists, which were normal, and lumbar spine, which showed minor disc narrowing at L4-S1. (AR 389, 396-97.) The record contains no further medical evidence relating to her carpal tunnel or back symptoms. Similarly, the record reflects that Plaintiff received very limited mental health care. As discussed above, after her January 27, 2020 psychological initial assessment with Dr. Ratniewski, Plaintiff attended only three cognitive behavioral therapy sessions on February 17, 2020, December 7, 2020, and November 10, 2021, (*see* AR 415-16, 451, 462), even though Dr. Ratniewski had prescribed a nine-month course of treatment.[10]

Plaintiff's sparse treatment record constituted a specific, clear, and convincing reason for the ALJ to discredit her symptom testimony.

### b.   Normal findings on mental status examination

Although an ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence," (*see Robbins v. Soc. Sec.*

---

[10]   The Court acknowledges that Plaintiff initiated her mental health treatment just prior to the onset of the COVID-19 pandemic, but the record reflects that her therapist, Dr. Ratniewski, conducted telephone appointments during this time. (AR 451, 462.) Therefore, mental health treatment remained available to Plaintiff, and the Court surmises that Plaintiff did not attend therapy on a regular basis for reasons other than the restrictions created by the pandemic.

*Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ may consider whether the alleged symptoms are consistent with the medical evidence as a factor in his evaluation. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). In this case, the ALJ observed that during a mental status examination performed by Dr. Ratniewski on January 20, 2020, Plaintiff's mood was anxious and depressed but her behavior, appearance, and cognition presented within normal limits. (AR 25, referring to AR 418.) The ALJ could properly rely on Plaintiff's normal mental status examination findings as a reason to discredit Plaintiff's testimony that she was unable to work due to her anxiety.

### c. Daily activities

An ALJ may properly consider the claimant's daily activities in evaluating subjective symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms); SSR 16-3p, 2017 WL 5180304, at *7 (same). Daily activities may form the basis of an adverse credibility determination when evidence concerning the claimant's daily activities contradicts his or her testimony, or when the activities meet the threshold for full-time work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021). "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Nevertheless, "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted) (superseded on other grounds by 20 C.F.R. § 404.1502(a) (2017)); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

///

Describing her daily activities, Plaintiff listed watching television, feeding and washing her dogs, preparing basic meals, shopping online, handling her savings and checking accounts, and talking to her sister. (AR 306-10.) Citing Plaintiff's responses, the ALJ concluded that Plaintiff's "ability to perform a wide range of activities" undermined Plaintiff's statements about the "alleged intensity, persistence, and limiting effects" of her symptoms. (AR 26.) The ALJ could reasonably conclude that Plaintiff's daily activities contradicted her testimony that she was incapable of working.

### d. Use of medication

In assessing a claimant's subjective symptoms, an ALJ may properly consider the "type, dosage, effectiveness, and side effects of any medication" a claimant has taken to alleviate her pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"). Here, the ALJ noted Plaintiff's use of Sertraline for depression. (AR 25, 26.) The record reflects that Plaintiff requested a refill of this medication from Dr. Otanez Cervantes on November 23, 2020, (*see* AR 439), which indicates that Plaintiff found the medication to be effective. The ALJ's rationale that Plaintiff's condition was stable with medication, without any negative side effects indicated in the record, constituted a specific, clear, and convincing reason to discredit her symptom testimony.

In sum, the Court finds that the ALJ set forth sufficient clear and convincing reasons to discredit Plaintiff's testimony regarding the functional limitations caused by her symptoms.

///
///
///
///
///

## IV.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated:  February 19, 2025

Hon. Steve B. Chu
United States Magistrate Judge